UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SPENCER NEAL, et al., | ) | CASE NO. 5:18-cv-2402 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| METRO REGIONAL TRANSIT AUTHORITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Pending before this Court is the motion for judgment on the pleadings filed by defendant Metro Regional Transit Authority ("Metro"). (Doc. No. 50 ["Mot."].) Plaintiffs Spencer Neal ("Neal") and William Richards ("Richards") (collectively, "plaintiffs") filed a brief in opposition (Doc. No. 52 ["Opp'n"])[1] and Metro filed a reply brief (Doc. No. 54 ["Reply"]). For the reasons

---

[1] Following the filing of plaintiffs' amended complaint, this Court held a telephone conference on January 29, 2019. (1/29/2019 Docket Entry.) During that conference, counsel for Metro discussed their intention to file a 12(c) motion. The Court set February 19, 2019, as the deadline for Metro to file a 12(c) motion, March 19, 2019, as the deadline for plaintiffs to file an opposition to the 12(c) motion, and March 29, 2019, as the deadline for Metro to file a reply. Accordingly, Metro filed its timely 12(c) motion on February 19, 2019. (*Id.*) Thereafter, plaintiffs filed an untimely opposition brief on March 21, 2019.

"Matters of docket control and discovery are within the sound discretion of the district court." *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 582 (6th Cir. 2010) (citing among authority *Jones v. Northcoast Behavioral Healthcare Sys.,* 84 F. App'x 597, 599 (6th Cir. 2003)). "When a party fails to meet a deadline, the district court should determine if such failure was the result of excusable neglect, Fed. R. Civ. P. 6(b)[.]" *Id.* (citing *Nafziger v. McDermott Int'l, Inc.,* 467 F.3d 514, 522 (6th Cir. 2006)).

> [T]he governing legal standard for excusable-neglect determinations is a balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger*, 467 F.3d at 522.

Although Metro made note of plaintiffs' untimely opposition in its reply brief, (Reply at 520), Metro does not contend it was prejudiced by plaintiffs' two-day belated opposition, nor does the Court believe Metro suffered any prejudice

discussed herein, defendant's motion for judgment on the pleadings is GRANTED.

I.   BACKGROUND

Plaintiffs filed this action on October 16, 2018, alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*., ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*., ("Rehabilitation Act"). (Doc. No. 44, Amended Complaint ["Am. Compl."].) Plaintiffs allege that Metro is violating the ADA by failing to provide accessible bus stops for its fixed-route bus system.[2] (Am. Compl. ¶ 2.)

Neal alleges that he is a qualified individual with a disability under the ADA and due to his disability is substantially impaired in several major life activities, including walking, and requires a wheelchair for mobility. (*Id.* ¶¶ 12–13.) Neal cannot walk, stand, or use his legs without assistance. (*Id.* ¶ 13.)

Richards alleges that he is also a qualified individual with a disability under the ADA and due to his disability, he is substantially impaired in several major life activities, including walking, and requires a wheelchair for mobility. (*Id.* ¶¶ 14–15.) Richards is unable to walk, stand, or use his legs without assistance. (*Id.* ¶ 15.)

Both Neal and Richards allege that they commonly use Metro's fixed-route public transportation system, including Metro's fixed-route bus systems, buses, and bus stops. (*Id.* ¶ 25.)

---

and notes that Metro was able to file its timely reply. Further, the two-day delay did not impact the judicial proceedings and there is no indication that plaintiffs' counsel acted in bad faith. As such, the Court determines that plaintiffs' untimely opposition is excusable neglect and the Court will not strike plaintiffs' opposition brief.

[2] In their original complaint, plaintiffs also named City of Akron, City of Barberton, City of Cuyahoga Falls, City of Fairlawn, City of Green, City of Hudson, City of Macedonia, City of Munroe Falls, City of Norton, City of Stow, City of Tallmadge, City of Twinsburg, Village of Lakemore, Village of Northfield, Village of Richfield, Village of Silver Lake, Bath Township, Copley Township, Coventry Township, Springfield Township, and Summit County, Office of County Executive as defendants. (Doc. No. 1.) Plaintiffs voluntarily dismissed these defendants (Docs. No. 36–37) and plaintiffs filed an amended complaint alleging violations by Metro only.

Richards alleges that he uses Metro's fixed-route system, buses, and bus stops several times per day and intends to continue using Metro's fixed-route bus service as his primary means of transportation. (*Id.* ¶¶ 26–27.) Richard also alleges that he will use Metro's fixed-route bus service to test it for access and compliance with the ADA and the Rehabilitation Act several times per year. (*Id.* ¶ 28.)

Neal alleges that he uses Metro's fixed-route bus system, buses, and bus stops when his vehicle is inoperable or under repair. (*Id.* ¶ 29.) Neal alleges that he intends to continue using Metro's fixed-route bus system as his secondary means or transportation, and he also intends to use Metro's fixed-route bus system to test it for access and compliance with the ADA and the Rehabilitation Act several times per year, starting in December 2018. (*Id.* ¶¶ 30–31.)

In their amended complaint, plaintiffs allege that while using Metro's fixed-route bus system, plaintiffs have tried to access bus stops and architectural features at those bus stops but have encountered numerous barriers which hindered plaintiffs' ability to access Metro's bus services and utilize the programs offered at the bus stops. (*Id.* ¶ 33.) Among the barriers that plaintiffs have experienced are noncompliant features such as lack of accessible routes to certain bus stops and inadequate or nonexistent landing pads at certain bus stops. (*Id.* ¶ 34.) Plaintiffs allege that on numerous occasions they have faced difficulty entering or disembarking from certain buses as a result of the lack of level landing pads at certain bus stops. (*Id.* ¶ 35.) As a result of certain bus stops lacking level landing pads, plaintiffs allege that they risk tipping out of their wheelchairs while entering or disembarking from buses or getting to and from certain bus stops. (*Id.* ¶ 36.)

In their amended complaint, plaintiffs group Metro's alleged ADA violations into two

categories: (1) failure to construct and alter bus stops in an accessible condition, and (2) failure to provide program access at existing bus stops. (*Id.* ¶ 43.) Plaintiffs provide examples of each alleged violation. (*Id.* ¶ 43.)

Plaintiffs brought the present suit seeking injunctive relief as well as attorneys' fees and expenses, and compensatory damages for Metro's alleged violations of the ADA and the Rehabilitation Act. (Am. Compl. at 439–40.[3]) Following the filing of plaintiffs' amended complaint, Metro filed the present motion for judgment on the pleadings. Plaintiffs filed an opposition, and Metro filed a reply. The matter is now ripe for the Court's review.

II.     **STANDARD OF REVIEW**

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id*. at 581 (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

"To survive a motion to dismiss [or judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks omitted). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

In considering a Rule 12(c) motion, the allegations in the complaint are the Court's primary focus. Still, the Court may also consider "'other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.'" *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 291 (6th Cir. 2015) (quoting *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011)). The Federal Rules of Evidence permit the Court to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The Court may take judicial notice on its own[.]" Fed. R. Evid. 201(c)(1). The Court may take judicial notice of a fact at any stage of the proceedings. *Livingston Christian Sch. V. Genoa Charter Twp.*, 858 F.3d 996, 1008 (6th Cir. 2017) (citing Fed. R. Evid. 201, Advisory

Comm. Notes (f)).

## III. DISCUSSION

In its motion, Metro contends that it is entitled to judgment as to plaintiffs' claims because (1) plaintiffs fail to show a lack of meaningful access to Metro's transportation systems and (2) plaintiffs lack Article III standing. (Mot. at 472.)

### A. Plaintiffs' Alleged Lack of Meaningful Access to Metro's Services

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

"Apart from [the Rehabilitation Act's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both [the Rehabilitation Act and Title II] are precisely the same." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008) (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 n.6 (2d Cir. 2002)). To establish a claim under Title II or the Rehabilitation Act, a plaintiff must show that: (1) he is disabled under the statute; (2) he is otherwise qualified for the program, services, or activities of the public entity; and (3) he is being excluded from participation in, or denied the benefits of, the program, services or activities by reason of his disability, or is being subjected to discrimination by reason of his disability. *See S.S.*, 532 F.3d at 453.

"Exclusion may be demonstrated by a showing that the defendants failed to provide 'meaningful access' to the program or services sought." *Williamson v. Slusher*, No. 1:17 CV 0106, 2017 WL 6805680, at *5 (N.D. Ohio Oct. 31, 2017) (quoting *Perez v. Arnone*, 600 F. App'x 20, 22 (2d Cir. 2015)); *see also Tennessee v. Lane*, 541 U.S. 509, 531, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) ("[F]ailure to accommodate persons with disabilities will often have the same practical effect as outright exclusion[.]"). As the Supreme Court held in *Alexander v. Choate*, 469 U.S. 287, 301, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985), "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." To establish a violation under the ADA or the Rehabilitation Act, it is plaintiffs' burden to show that they have been denied meaningful access to benefits on account of their disability. *See S.S.*, 532 F.3d at 453 (listing elements of a prima facie case under Title II, which plaintiff has initial burden of proving); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998) (listing elements of prima facie case under the Rehabilitation Act, which plaintiff has initial burden of proving).

Additionally, under the ADA, a public entity operating a fixed-route transportation system must also provide

> [P]aratransit and other special transportation services to individuals with disabilities . . . that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system; or (2) in the case of response time, which is comparable, to the extent practicable, to the level of designated public transportation services provided to individuals without disabilities using such system.

42 U.S.C. § 12143(a). It is discriminatory for a public transportation provider not to provide comparable paratransit services to disabled users. *Id.*

Metro provides such a paratransit service meant to complement Metro's fixed-route

services and to provide access to disabled individuals when barriers prevent access to bus stops or buses. Metro's website contains information regarding its paratransit services.[4] Metro's website lists Metro's paratransit services as including "ADA" Services and "SCAT Services"[5] Metro's website also explains who qualifies for Metro's paratransit services.[6] Metro's website identifies three groups of persons who are eligible for Metro's ADA Services: "[p]eople who, because of their disability, are unable to board, ride or exit an accessible vehicle that is part of the regular service; [p]eople with disabilities who are able to use accessible vehicles, but accessible vehicles are not available at the time when it is needed; [and p]eople who can ride accessible buses, but whose disability prevents them from getting to and from the bus stop.

Importantly, neither party contests the *existence* of Metro's paratransit services. In fact, plaintiffs attach a portion of Metro's website to their complaint which mentions Metro's paratransit services. (Am. Compl. Ex. 1 at 443–44 (mentioning Metro's SCAT buses).) Further, the existence of Metro's paratransit services is generally known within the court's territorial jurisdiction. As such, the Court takes judicial notice of the fact that Metro's paratransit services exist.

Metro contends it is entitled to judgment on the pleadings because Metro offers paratransit services that provide plaintiffs with "meaningful access" to Metro's transportation system and services. (Mot. at 476–78.) Metro contends that its paratransit services complement its fixed-route system and provide services at the same time as Metro's line service, with the paratransit pick-up location and destination no further than three-fourths of a mile from the line service route. (*Id.* at

---

[4] In ruling on a Rule 12(c) motion, the Court may consider matters of public record without converting the motion into one for summary judgment. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

[5] *See Bus Services*, METRO, https://www.akronmetro.org/bus-services.aspx.

[6] *See ADA—Who Qualifies*, METRO, https://www.akronmetro.org/metro-ada-qualifiers.aspx.

477.)

In response, plaintiffs contend that Metro's paratransit system should not be considered when determining whether plaintiffs were denied meaningful access to Metro's services because Metro has not proven that Metro's paratransit system is a legally recognized "equivalent facilitation" of Metro's fixed-route system. (Opp'n at 493.) Alternatively (and although not alleged in their complaint), plaintiffs contend that Metro's paratransit services are irrelevant when determining whether plaintiffs were denied meaningful access to Metro's services because plaintiffs are ineligible for Metro's paratransit services. (*Id.* at 494.)

### 1. Whether Metro's Paratransit Services Are an "Equivalent Facilitation" Is Inapplicable

First, plaintiffs contend that to be considered an equivalent facilitation, Metro must fulfill the requirements set forth in 49 C.F.R. § 37.9(d), which covers the process a public entity providing transportation *facilities* must undertake to receive a variance for an equivalent facilitation. (*Id.* at 494.) Plaintiffs contend that Metro has failed to follow these steps and has failed to prove whether Metro received a variance for equivalent facilitation in compliance with the ADA. (*Id.*)

But as Metro correctly points out in its reply, plaintiffs' referenced sections of the Code of Federal Regulations are inapplicable here. (Reply at 517.) The sections that plaintiffs reference have no bearing on Metro's paratransit service because plaintiffs' referenced sections concern access to *facilities*, whereas this case concerns access to *services*. Plaintiffs' allegations touch on facilities—Metro's bus stops—but the crux of plaintiffs' allegations is the denial of transportation services. In their amended complaint, plaintiffs do not allege that Metro is denying their access to facilities; plaintiffs allege that Metro is denying their access to Metro's services. (Am. Compl. ¶¶

33–35, 41.)

Moreover, these sections are inapplicable because Metro does not seek to establish its paratransit service is an "equivalent facilitation," but instead is a "complement" to its fixed-route service. (Mot. at 477 ("[Metro] does provide paratransit services that complement its fixed route system . . . ."); Reply at 517 ("As an initial matter, [Metro] never stated that its paratransit services were 'equivalent' to its fixed-route system, but instead argued that it offers a paratransit service that 'completement[s]' [sic]' its fixed route system . . . ." (citing Mot. at 476–77)).)

Whether Metro's paratransit services qualify as a complement to its fixed-route service is governed by 49 C.F.R. §§ 37.121–37.155. "To be deemed comparable to fixed route service, a complementary paratransit system shall meet the requirements of §§ 37.123–37.133 of this subpart." 49 C.F.R. § 37.121(b). No section of 49 C.F.R. §§ 37.123–37.133 requires Metro to obtain any sort of variance. Plaintiffs do not contend that Metro's paratransit services do not comply with the applicable 49 C.F.R. §§ 37.121–37.155.

Further, this Court finds persuasive the precedential support for Metro's argument that its paratransit services can provide "meaningful access" to Metro's services and satisfy Metro's requirements under the ADA and the Rehabilitation Act. *See Kirola v. City & Cty. of S.F.*, 860 F.3d 1164, 1183 (9th Cir. 2017) ("The public transportation and paratransit services are the sorts of 'other methods' that can satisfy program access even if other particular methods of benefitting from the program are inaccessible."); *Guerra v. W. L.A. Coll.*, No. CV 16-6796-MWF (KSx), 2018 WL 4026452, at *8 (C.D. Cal. Aug. 20, 2018) ("[T]here is no precedential support for [p]laintiffs' argument that a publicly funded entity . . . may not rely upon other well-established publicly funded services, such as a . . . paratransit service, to assist in providing meaningful access to its disabled

participants." (citing *Kirola*)); *see also Access Ctr. for Indep. Living v. WP Glimcher, Inc.*, No. 3:15-cv-444, 2018 WL 2763453, at *6 (S.D. Ohio June 8, 2018) (finding mall did not violate ADA by failing to move bus stop closer to the mall entrance, in part, because there was a paratransit service available to take disabled patrons to the mall entrance).

In sum, plaintiffs' contention that Metro's paratransit system is not an "equivalent facilitation" is misplaced. Further, this Court finds Metro's paratransit services might complement Metro's fixed-route system to provide meaningful access to Metro's transportation services to disabled customers. To be clear, the Court is not commenting on whether Metro's paratransit system is in fact a successful complement providing meaningful access to these plaintiffs. *See Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1024–25 (N.D. Ohio 2011) (determining whether accommodation to provide meaningful access was reasonable is a fact-specific inquiry not appropriate for motion to dismiss). All the Court holds at this stage is that Metro operates a paratransit system and that a paratransit system is capable of complementing fixed-route systems to provide meaningful access in accordance with the ADA. *See Kirola*, 860 F.3d at 1183; *Guerra*, 2018 WL 4026452, at *8; *Access Ctr. for Indep. Living*, 2018 WL 2763453, at *6. The plaintiffs cannot completely ignore this service in their amended complaint regarding meaningful access to Metro's transportation services.

2. **Plaintiffs Contend They Are Ineligible for Metro's Paratransit Services—Despite Never Alleging any Attempt to Use Metro's Paratransit Services**

Second, plaintiffs contend that the existence of Metro's paratransit services are irrelevant to this case because plaintiffs are ineligible for Metro's paratransit services. Plaintiffs did not allege in their amended complaint that they were ineligible for Metro's paratransit services. Instead,

plaintiffs contend for the first time in their opposition to Metro's motion for judgment on the pleadings that they are ineligible for Metro's paratransit system. *See Turnage v. Oldham*, 346 F. Supp. 3d 1141, 1158 (W.D. Tenn. 2018) ("The Court may not consider new facts alleged in [p]laintiffs' [r]esponse [to defendant's motion to dismiss]." (citing *Neff v. Standard Fed. Bank*, No. 2:06-cv-856, 2007 WL 2874794, at *9 (S.D. Ohio Sept. 27, 2007) ("The Court may not consider . . . new allegations not contained in the complaint."))). Plaintiffs contend that to be eligible for Metro's paratransit services, persons must be "prevented from using [Metro's] fixed-route system." (Opp'n at 495.) Thus—despite no allegations that plaintiffs ever attempted to use Metro's paratransit services—plaintiffs contend that because they can use Metro's fixed-route system, they are ineligible for Metro's paratransit services. (*Id.*; *see* Am. Compl. ¶ 33 ("While using [Metro's] bus systems, [plaintiffs] have tried to access bus stops and architectural features at those bus stops but have encountered numerous barriers which *hindered* their ability to access [Metro's] services and utilize the programs offered at the bus stops." (emphasis added)).)

But as previously observed, the *existence* of Metro's paratransit services is integral to plaintiffs' ADA claims and thus is appropriate for the Court to consider at this point in the proceedings. *Campbell*, 611 F. App'x at 291. The Court can consider an entity's alternative services when determining whether a plaintiff has been denied meaningful access to the entity's provided services. *Jones v. City of Monroe*, 341 F.3d 474, 481 (6th Cir. 2003) (considering "evidence of alternative accommodations" in determining whether the plaintiff had been provided meaningful access under Title II of the ADA). Plaintiffs allege in their amended complaint that they were denied meaningful access to the services Metro provides: transportation around the Akron area. A particularly relevant part of Metro's services includes Metro's paratransit services.

12

Plaintiffs ask this Court to disregard Metro's paratransit services and find that plaintiffs have sufficiently pleaded a lack of meaningful access to Metro's other services. *See Jones*, 341 F.3d at 480 (discussing how defendant was not required to provide plaintiff with the particular accommodation she requested, so long as she had meaningful access to defendant's provided services). While the plaintiffs might, the Court will not ignore services offered with the express intent of providing access to Metro's transportation services to individuals whom face barriers accessing Metro's fixed-route services. The Court finds that plaintiffs have not pleaded sufficiently any denial of meaningful access to Metro's transportation services where plaintiffs have not alleged that they ever attempted to use Metro's paratransit services.

Again, the Court is well within its discretion to consider the existence of Metro's paratransit services—a matter well known in the court's territorial jurisdiction, not contested by either party, and integral to plaintiffs' claims—in determine whether the plaintiffs' have successfully pleaded their claims. *Campbell*, 611 F. App'x at 291. The Court is not commenting on whether plaintiffs are or would be eligible for Metro's paratransit services. All the Court holds now is that, as a matter of law, plaintiffs cannot establish that they were denied meaningful access from services that plaintiffs have never attempted to procure.

In sum, plaintiffs cannot maintain their Title II or Rehabilitation Act claims because they have not properly alleged that they were denied meaningful access to Metro's services where Metro offers paratransit services specifically as a complement service, but plaintiffs have not alleged they were denied meaningful access to those services.

### B. Article III and "Tester" Standing

Because this Court finds that plaintiffs have failed to plead a lack of meaningful access to

Metro's services, and thus cannot maintain their claims under Title II or the Rehabilitation Act, this Court need not address whether plaintiffs have Article III or "tester" standing to pursue this case in this Court. However, without fully considering the issue, based on the amended complaint it appears as though plaintiffs likely have Article III standing and tester standing under Sixth Circuit case law. *See Gaylor v. Hamilton Crossings CMBS*, 582 F. App'x 576, 579–81 (6th Cir. 2014) (finding the plaintiff had "tester" standing where plaintiff satisfied Article III standing because the plaintiff pleaded a concrete and particularized injury and pleaded the requisite threat of future injury where he established (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but was deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers).

## IV. CONCLUSION

For the aforementioned reasons, Metro's motion for judgment on the pleadings is GRANTED. This case hereby is dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: August 8, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**